(Cuyahoga County Common Pleas.)

## THE NATIONAL SALT COMPANY v. THE UNITED SALT COMPANY.

*Receiver—When appointment of proper—* A receiver may be appointed of a corporation, partnership or individual, without regard to their insolvency, in any case when such appointment is necessary for the preservation of the property pending litigation.

*Receiver of Corporation.—When Appointment Proper.*—The appointment of a receiver for a corporation, at the instance of one of its stockholders, is proper, where all the shares of such corporation have been sold to another corporation, and placed in the hands of third parties as collateral security, until paid for, and when the selling corporation is without legal officers or directors, and the purchasing corporation has refused to carry out the obligations of the selling corporation, which has been sued thereupon, and the purchasing corporation has brought an action to have its contract of purchase rescinded and annulled.

*Same — Appointment without notice —* A court may appoint a receiver of a corporation, without notice, if the facts and situation warrant it.

*What are Judges "Chambers."*—A judges "chambers" for the transaction of business properly transactable there, are not to be understood as being confined to his room in the court house, but may be at his home or anywhere in his district where he happens to be.

STONE, J.,

On the third of April, 1901, the National Salt Company brought an action in this court against the United Salt Company, the stockholders of the United Salt Company and the American Trust Company, the purpose and object of which is to secure the cancellation or annulment of a certain contract made by the National Salt Company and the United Salt Company on the 22nd day of September, 1899, by the terms of which the National Salt Company became the owner of all the shares of the capital stock of the United Company. The bill filed is one of great length, and I need only state the substance of what it contains, in disposing of this motion.

The plaintiff company was organized on the 20th day of March, 1899, under the laws of the State of New Jersey, and by its charter was organized for the purpose of mining and manufacturing or producing salt and selling the same; it also had power under its charter, to acquire the stock of other companies, and to vote the stock of such other companies.

The United Salt Company was organized under the laws of this state, with a capital of one million dollars.

The petition recites at length the nature and character of the contract that was made between these companies. It appears that the National Salt Company undertook to purchase the stock of the United Salt Company upon substantially the following terms:

The shareholders of the United Company were to receive for each share $106.25 in money to be paid in ten equal semi-annual payments, and also were to have for each of such shares one and a quarter shares of the preferred seven per cent. stock of the National Company and one and a quarter shares of its common stock. It appears that all of the stock of the United Company was transferred to the National Company endorsed in blank and deposited with the American Trust Company as security for the performance of the contract on the part of the National Company. My recollection from the reading of the bill is, that the preferred and common stock of the National Company, which the shareholders of the United Company were ultimately to receive, was likewise deposited with the American Trust Company or one of its representatives nominated for that purpose, to be delivered upon the final consumation of this contract and payment of the money due under it to the shareholders of the United Company.

It appears that under this contract two semi-annual payments were made amounting to something over three hundred thousand dollars. The plaintiff remained in the custody

and control of this property under this contract of purchase, for something more than a year and within that period of time the payments I have suggested were made. It is alleged that this was not in fact a *bona fide* sale of the property of the United Company to the National Salt Company, but was rather a scheme, or a device in the nature of an unlawful combination to control and limit the production of salt in the State of Ohio, and control the price. In short, it was a plan by which the production of salt in Ohio might be in the hands of a monopoly, and thus control the output as well as the price. That the contract so-called was *ultra vires,* that it was in violation of the anti-trust laws of this state, and it is now asked under this bill that the contract be declared null and void, and that the plaintiff be relieved of the ownership, the apparent ownership and possesion of this property, and that the defendants and each of them may be required to restore to plaintiff all that they have received in the attempted performance of the contract. That the certificates of stock deposited with the American Trust Company, be held by that company until the rights of the parties are determined, and that upon the final hearing, the stocks to which the National Salt Company is entitled, be returned to it and the plaintiff be entirely relieved from all obligations under this contract.

Attached to the petition will be found the contract, or a copy of it, under which this alleged purchase was made, and all of the collateral agreements and contracts which are a part of it.

On the 8th of April one of the original shareholders of the United Salt Company, J. M. Henderson, filed an answer and cross-petition, and asked for the appointment of a receiver. The answer admits the execution of the contract, admits all of the allegations of the petition in so far as the petition narrates the sale, the delivery of the stock, the subsequent pledge of it as security for the payment of the money to be paid to the shareholders of the United Salt Company, but takes issue with the plaintiff and denies all the allegations of the petition wherein it is claimed the contract was unlawful, all those allegations in which it is claimed it was a scheme or a device to avoid responsibility or liability under the anti-trust law of the state, but asserts that it was a sale made in good faith of all of the property of the United Company to the National Company.

From the cross-petition it appears that the cross-petitioner at the time of the execution of this contract of September 22, 1899, was the owner and holder of ninety shares of the capital stock of the United Salt Company of Cleveland, of the par value of $9,000.00. It is alleged that the United Company had been largely engaged for a number of years in the manufacture of salt and in the marketing of the same throughout the state of Ohio and in the states west thereof, and had established a very large and profitable trade in such manufacture and sale, it having acquired special valuable facilities for the cheap production of such commodity, and that at such time, by reason of the large and growing trade which it had established, and its great facilities for cheap production, the stock of said company had, as plaintiff well knew, great value.

It is alleged that the company had entered into a number of contracts with various manufacturing enterprises in this city, for exhaust steam from these establishments which it, the United Salt Company, used as a fuel in the prosecution of its business; that these were valuable contracts and by means of which they were enabled to manufacture salt at a greatly reduced cost. It is said that they were in possession of a number of valuable patents and patented processes whereby it enjoyed special advantages in the manufacture of such commodity. That it had entered into certain contracts with a number of Chicago packers, and other packers in the West, who used large quantities of salt in connection with their business, to supply them with salt for a number of years, which conracts were profitable and of great value of said company.

It is alleged that after the plaintiff came into possession of the property of the United Company, it refused to carry out these contracts made with Western packers; that the price of salt was advanced; that as a result the persons with whom the United Company had these contracts, have brought suits in this court said to aggregate something like $150,-000 for damages claimed to have been sustained by them by the violation of the contracts to which I referred. It is alleged that the plaintiff company has omitted and neglected to pay the charges or the rentals under the contracts for steam had with other neighboring concerns in this city. That the stockholders of the United Company have protested to the officers of the National Salt Company against the repudiation of these contracts, its failure to keep them, and that the United Company has promised to take care of these matters, to take up the adjustment of damages, to relieve this company of any liability in that behalf, but that nothing has been done in that regard. And that the suits have been brought, as already suggested.

Without going into any great detail, the claim is made that there is an effort to wreck this company, to reduce its production and to

make the property valueless, and that the result has been the impairment of its value, and for these and other reasons, application was made to the Court for the appointment of a Receiver. This application was made at the residence of the Judge after the close of court, between the hours of six and seven o'clock. Such showing was made as at the time as seemed to me to warrant the appointment of a receiver. The case is now before the court on a motion to vacate the order made and to discharge the receiver, and for the following reasons:

1st. That the appointment of the receiver was contrary to law.

2nd. The appointment of the receiver was without any facts or evidence before the court to justify the appointment.

3rd. The facts stated in the cross-petition were insufficient to authorize or justify the court in the appointment that was made.

4th. The appointment was made without notice; that it was made without notice to the defendant, the United Salt Company.

Apparently, this motion is urged by the United Salt Company, and so far as the pleadings are concerned, it is urged by no other party to this suit.

The first case for the consideration of the court, is, whether, upon the papers submitted, it is a case in which a receiver may be rightfully appointed. The learned counsel for the motion contends that a receiver can be appointed only when it is made to appear, in the case of a corporation, that it is insolvent, and that a receiver is necessary to wind up its affairs, to dispose of the property, to pay the creditors. I do not so understand the law. I suppose it to be entirely competent to appoint a receiver in any case, whetther it be a case of a corporation or an individual or individuals or partnership where the facts are such that such appointment is rendered competent for the mere purpose of the preservation of the property that is involved. It is too clear a proposition to make it worth while to cite authorties in support of the doctrine, for numerous cases can be found that fully sustain the principle that a receiver may be appointed in any case where it is necessary for the preservation of the property pending litigation.

What was the situation that was presented to the court in this case? Not that the United Salt Company was insolvent; not that it owed a dollar but what probably it is abundantly able to pay; but it was made to appear by the petition that the plaintiff company which had purchased this property apparently, and was in possession of it, was here, in court disclaiming ownership of it, demanding to be released from all obligations concerning it,

asking a rescission of the contract by which it became the possessor of it. It is made to appear from the cross-petition that this company has been sued for $150,000 or more for alleged violation of its contract obligations. It appears that the persons nominally in charge of the United Salt Company are not shareholders in it and own none of its stock. It has, according to the record, five directors, so called—if it had more, they have resigned —none of whom have any beneficial interest in this property, and own none of its stock. Doubtless, upon the record of the company, if a record is kept, these gentlemen appear to have one share each of the capital stock of the United Company. It is claimed, and it is not seriously controverted, but that these several single shares were immediately endorsed in blank by these so-called directors, and turned over to the Trust Company as part of the 9,-943 shares outstanding of the United Salt Company.

There was an effort made to comply with the law of the state which requires that directors of a company shall be shareholders in it, by having appear upon the records nominally that these men own, each of them, one share. I may say that in addition to the facts submitted to me when the application was made, it now appears from the affidavits of three of these directors, that they never have held a director's meeting except in possibly one case, to fill the vacancy occurring in the office of president, and the election of a new president who has apparently no stock in the company and who resides in the state of New York; that they have never had anything to do with the management of the company; that they in no way dictate its policy; that they are clerks and employes in the office performing, such duties as may be required of them in such capacity. And they assert that they don't know who does dictate the policy of the company or manage its affairs. The plaintiff company disowns it. The original stockholders of the United Company have sold all of their stock which is now in the hands of the American Trust Company under this agreement, so that the original stockholders are entirely out of control, have no power to meet to elect directors or exercise any control over this property. They occupy, doubtless, the position of pledgees of this stock. And as pledgees, are entitled to such rights as that relation gives them. Here is a property found within the jurisdiction of the court said to be worth a million dollars disowned by everybody, derelict, set adrift, apparently in the possession of men said to be, but who in law are not, directors and have no legal right to exer-

cise that office because by the admitted facts here, they have no substantial or beneficial interest in it as shareholders.    The question submitted to the court is, whether such conditions authorize a court of equity to take charge of property, foster it and care for it for the benefit of those, who it shall ultimately be determined are entitled to have it.    No case has been suggested, no case has been cited that furnishes any parallel to it, and for the very good reason I apprehend, that no such case has ever been known to occur before.    To my mind it is an unusual and remarkable state of things.    And I know of no case where the fostering care of a court of equity may not be more beneficially exerted than is the case presented to the court by the pleadings in this action.    The petition itself makes a case for a receiver in the judgment of the court.    But if it were lacking in any regard, since no application was made or is made in the petition itself it needed only to be supplemented by the cross-petition filed in this case, to make it clear that it was the duty of the court to appoint a receiver to take charge of the property under the circumstances presented.

It is said, however, that no notice was given of this application, and for that reason the appointment should be vacated.    No one will seriously question the right of the court to appoint a receiver without notice, if the fact and the situation warrant it.

It is no new proposition to any member of the bar or counsel present here, that receivers are appointed frequently in this and other jurisdictions throughout the United States, without notice, whenever the situation is such as that an immediate appointment seems to be justified or seems to be required.

It seemed to the court at the time that upon the admitted facts, taking the cross-petition and the petition together, upon the circumstances existing here, that a great property in the custody of no one having any substantial or beneficial interest in it, and disowned by its purchaser, there could be no sort of question, but the court ought to promptly put some person in charge of this property competent to take care of it until some further order should be made concerning it, and nothing has occurred in the progress of this investigation to change my views upon that subject. But it is said that it was irregularly made, in that it was not made at chambers; that *"chambers"* means the room off from the court-room, the judge's private room, if, perchance, he has one.    I do not understand that to be the rule.    I have never supposed it was necessary for a judge to go through the farcical performance, if called upon to grant an injunction or to appoint a receiver or do any other act that

is permitted under the law to be done when court is not in session,—to leave his home at any hour of the night and repair to a room off of the court-room in the court-house, in order to make a lawful order.    I think the rule is correctly stated by Mr. Justice Sawyer of the Federal Court of California, *In re Neagle,* reported in the 39th Federal Reporter, 833:

"The Judge's chambers do not appear to have any 'local habitation.'    The Justices of the Supreme Court at Washington have, in fact, no chambers, otherwise, than as they study, and do their work out of court, at a room in their own residences.    We have in the San Francisco court house, rooms that we call chambers, in which the work of the judges out of court is, in part, but not wholly, performed.    We apprehend that the marshal would as clearly be authorized to protect the judges here, in chambers, as in the court room. All business done out of court by the judge is called, 'chamber business.'    But it is not necessary to be done in what is actually called chambers.    Chamber business may be done, and often is done, on the street, in the judge's own house, at the hotel where he stops, when absent from home, or it may be done *in transitu,* on the cars, in going from one place to another, within the proper jurisdiction to hold court.    Mr. Justice Field could, as well, and as authoritatively, issued a temporary injunction, grant a writ of *habeas corpus,* an order to show cause, or do any other chamber business for the district in the dining room at Lathrop or in the cars, as at his chambers in San Francisco, or in the court room. He could have made a writ of *habeas corpus* returnable before himself on the car, and lawfully heard and decided the case while on his passage to San Francisco. The chambers of the judge, where chambers are provided, are not an element of jurisdiction, but are a convenience to the judge and to suitors—places, where the judge at proper times can be readily found, and the business conveniently transacted.    But the chambers of the judge, as a legal entity, are something of a myth.    For the purposes of jurisdiction, the chambers of the judge are wherever he happens to be in his Circuit or district, when the exigencies of the case call for the transaction of chamber business, and a judge is as clearly engaged in the discharge of the duties of his office, when going from one place of holding court to another, for the purpose of holding court, and just as much entitled to protection from his own government against murderous or other assaults, from desparate suitors, on account of his judicial action, as when actually engaged in business at chambers, or in holding court."

That I think, states the well-recognized doc-

trine everywhere, and there is no holding that I am aware of by the Supreme Court of this state, and no rule of practice at variance with the principle announced by Justice Sawyer in the case just cited.

So there is no occasion for alarm, I think, because a judge is sometimes called upon to perform an official act at his own home, and there is nothing about this appointment that is irregular because it was made at the place indicated. This motion is urged, as I stated in the beginning, apparently on behalf of The United Salt Company. It is not very clear to me that the learned counsel for the motion represented the United Salt Company, or, indeed, any other substantial interests in this controversy. Certainly, the board of directors of this company have taken no action looking to a defense here. They are exercising no control over this property, so far as I can learn from the statements of counsel himself, is that he is employed by the Secretary and Treasurer of this company to appear in behalf of this motion. It is a very serious question whether this officer has any interest in this litigation either as an individual or as an officer. If he has any, it probably is only as it relates to his employment as a secretary and the compensation he might receive in the performance of that service while there. Certain it is, he has no stock of this company, and the court has no difficulty in finding from the evidence submitted upon this motion, that none of the officers or persons assuming to act on behalf of this company have any legal standing as officers.

An affidavit was submitted, or affidavits, of Frederick Roberts, George W. Stage and Douglass F. Wallace, who say that they are directors of the United Salt Company. That there are but five directors of the defendant company, the names of whom, in addition to these affiants, are N. S. Beardslee, also President of the company, and it appears that he lives in Warsaw, New York, and W. L. Moore, who is also Secretary and Treasurer. That these affiants and Mr. Moore are the only directors of the company residing in the State of Ohio. That there has been no meeting of the board of directors of said company at which any action has been taken or considered by said directors with reference to the procuring of the removal of the Receiver appointed by said court, for said company, or at which any action has been taken or considered by said di-

rectors with reference to the appointment of a Receiver, or of a co-receiver of said defendant company, or any matter whatever, in connection with the litigation pending in the above-entitled action. That they and each of them have been for a long time past engaged in active participation in the operation and business of said defendant company as employes thereof, and that they have been continued by the receiver herein as employes in the various positions in which they have been heretofore engaged as employes for said company, and are now thus engaged under the employment and direction of said receiver. Each and all of said affiants say that at no time since their election as said directors have they ever been consulted by said Beardslee or Moore or any other person in regard to the matters involved in this action, or any action, or any other matters whatever, concerning the interests of said defendant company or the policy to be pursued by said company in its business management or its relation or dealings with any other person or company whatever, and that no meeting of the board of directors has been held since their election thereto excepting one meeting held at the request of Mr. Moore for the purpose of acting upon the resignation of the former president of the company and choosing his successor. These affiants further say that the business policy and management of said company, during their directorship have not been determined by the board of directors, and that so far as the same have been fixed and determined, affiants are unable to state by whom such action has been taken. Said affiants and each of them say that in their judgment, the affairs of said company at the time this action was commenced were in such condition as to make it advisable and for the best interest of said Company to have its affairs and property placed in the hands of a Receiver and it is their judgment and their wish, so far as they have any authority to speak in the matter, to have the present receivership remain undisturbed until the final settlement of said litigation, or until the affairs of said company shall have so charge as to make it to the interest of said company to discharge said receivership; that in their opinion the present receiver of said property was a proper person to be selected and should not be removed."

Perhaps their advice upon that subject is not of any special significance, but I read it only

to illustrate the condition this company was in in respect to its supposed duly appointed and qualified officers. It simply illustrates the fact that I have heretofore stated, that this company is without any legal control or management by any lawfully constituted board of directors, confessedly, and there is no board here, or officer here, demanding the removal of this receiver or having any right or authority to make such demand.

The rather caustic, but sugar-coated observations of the learned counsel for the motion would have, I think, more force and effect with the court if he represented something of substance in this inquiry, instead of a shadow. But he has done it with such infinite, grace and skill that he is relieved from the criticism of appearing in a ridiculous attitude in the prosecution of this motion.

Manifestly the shareholders of the United Company, and The National Salt Company are the parties interested in this appointment.

While The National Salt Company disclaims ownership of this property, and seeks to be relieved of the responsibility of its control, management and ownership, there is a possibility that it may not get the relief sought. It may be held by the court, upon final hearing in this case, that it did purchase the property of the United Salt Company and is under legal obligations to pay for it, to carry out this contract. In that aspect of the case it is in some measure concerned, and is entitled to have a receiver here free from any possibility of criticism or of bias or prejudice, and who will admininster this trust honestly, faithfully, and for the best interests of the property itself. I do not know that it necessarily follows that the best administration of this property would prove of the greatest advantage to the plaintiff. I am not sure how that would work out. It might be to its advantage if it was closed. But that is not a question now before the court. It has, as I say, an interest in the preservation of this property, as the apparent present owner of it, but which ownership it repudiates. Clearly enough, whoever is in charge of this property should preserve it, and he should preserve it in such a way as that if it shall be returned to The United Salt Company, it will yield as much as may be to pay its creditors, if it has creditors, and to return to its stockholders as much of the property as the receiver is able to preserve for them. If the property shall remain the property of The National Salt Company, then it shall be returned to it in as prosperous condition as may be possible. Whether the business of The United Company shall be

continued by the receiver, is a question for the court to determine upon an application made for that purpose. If it seems wise and proper that it should be continued, and for the interests of the creditors and the people owning this property, whomever they may be finally determined to be, then the business should be carried on. If it seems ultimately wise to supend operations, then an order can be made to that effect. In short, the court's officer will perform such duties in that regard as seems proper to be performed.

It is said that the present receiver is the close friend and associate of the attorneys upon the one side, that he has heretofore acted as counsel for one of the parties concerned and beneficially interested in this property. When this application was made counsel for the cross-petitioner suggested his appointment.

While I am still of the opinion that he would perform this duty in a way eminently satisfactory to all parties, in looking after and caring for this property, and administering the affairs of this company, I am of the opinion that some change should be made in this appointment. If counsel can agree upon some person as co-receiver, I will be entirely satisfied to adopt their suggestions and make such additional appointment. If they are unable to agree upon it, I will make such order as I deem proper myself.

Former entry vacated, and A. W. Lamson and J .B. Zerbe appointed receivers. Bond each, $25,000.00.

Journal Entry—April 13, 1901.

The motion to vacate is overruled.

Goulder & Holding, for plaintiff.

Henderson & Quail, for defendants.